IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | |
| Plaintiffs, | CIVIL ACTION NO.: 4:18-cv-128 |
| v. | |
| GENESIS GLOBAL HEALTHCARE, et al., | |
| Defendants. | |

**O R D E R**

This is a *qui tam* action brought by Jerry Cohn Jr., M.D., and Sharon Bell as Relators on behalf of the United States under the False Claims Act (the "FCA") and on behalf of the state of Georgia under the Georgia False Medicaid Claims Act (the "GFMCA").[1] Relators bring suit against Defendants Genesis Vascular of Pooler, LLC ("GVP");[2] Genesis Global Healthcare, LLC; Genesis Healthcare Management, LLC; Genesis Vascular, LLC; Statesboro Cardiology, P.A.; James O'Dare; Barbara O'Dare; Donald Geer; Dr. Abraham Lin; C3 of Bulloch, Inc.; Dr. Stanley J. Shin; Alexis M. Shin, as trustee of the Stanley J. Shin Family Trust; Dr. Todd Newsom; Dr. Howard Gale; Dr. Leonard Talarico; Pooler Property Holdings, LLC; Dr. David Nabert; and Dr.

---

[1] The FCA allows a private person, known as a relator, to bring an FCA suit on behalf of the United States in a *qui tam* action. 31 U.S.C. § 3730(b)(1). A relator serves the United States with a copy of the complaint, and the United States then has sixty days to intervene and proceed with the action once served. Id. § 3730(b)(2). If the United States does not intervene, the relator may proceed individually with the action. Id. § 3730(b)(4). Similarly, the GFMCA permits a private person to act as a relator on behalf of the state of Georgia and continue with the suit even after the state of Georgia declines to intervene. See O.C.G.A. § 49-4-168.2(b), (f).

[2] Relators voluntarily dismissed their claims against GVP without prejudice on February 16, 2021. (Doc. 112.)

Todd Becker[3] for alleged violations of the FCA and the GFMCA. (See doc. 131, p. 2.) Various Defendants previously filed motions to dismiss the First Amended Complaint. (Docs. 72, 73, 74, 75, 80, 81.) The Court entered an Order granting in part and denying in part the motions to dismiss and directing Relators to file a Second Amended Complaint to cure multiple pleading deficiencies. (Doc. 130 (the "Order").)

Presently before the Court are three Motions to Dismiss the Second Amended Complaint: one filed by Defendants Statesboro Cardiology, P.A., Dr. Abraham Lin, C3 of Bulloch, Inc., Dr. Stanley J. Shin, Alexis M. Shin as trustee for the Stanley J. Shin Family Trust, Dr. Leonard Talarico, Pooler Property Holdings, LLC, and Dr. David Nabert (collectively, the "Moving Defendants"), (doc. 139); one filed by Defendant Barbara O'Dare, (doc. 158); and one filed by Defendant James O'Dare, (doc. 159). (The Court will refer to Barbara O'Dare and James O'Dare collectively as the "O'Dare Defendants.") All of the at-issue Motions argue that the Second Amended Complaint failed to remedy the pleading deficiencies identified in the Order. (See generally docs. 139, 158, 159.) Relators filed Responses to the Motions to Dismiss. (Docs. 157, 160.) The O'Dare Defendants collectively filed a Reply, (doc. 166), but the Moving Defendants did not. For the reasons more fully explained herein, the Court **DENIES** all three of the Motions to Dismiss. (Docs. 139, 158, 159.)

---

[3] Brian Moogerfield was also originally listed as a named Defendant in this case. (See doc. 3.) However, he is not named in either the First Amended Complaint or the Second Amended Complaint. (See docs. 32, 131.) He also does not appear to be represented in this case and has not joined on any of the Motions. Plaintiffs shall update the Court on the status of all claims against Brian Moogerfield within **fourteen (14) days** of the date of this Order.

2

## BACKGROUND

**I.     Factual Background of the Allegedly Fraudulent Scheme**

According to the Second Amended Complaint, in December 2014, the "Genesis Individual Defendants" (the O'Dare Defendants and non-moving Defendants Geer and Yanes), formed the "Genesis Entities" (consisting of non-moving Defendants Genesis Vascular, Genesis Global, and Genesis Management) with the intention of forming a vascular surgical center in Pooler, Georgia: GVP. (Doc. 131, pp. 29–30.) To form GVP, the Genesis Individual Defendants recruited medical physicians in the greater Savannah area as investors, and ultimately retained Defendants Drs. Lin, Shin, Newsom, Gale, Talarico, Nabert, and Becker as investors in GVP (collectively the "Physician Investors"). (Id. at pp. 10, 30–31.) According to the Second Amended Complaint, Lin's investment was made through his company, Defendant C3 of Bulloch, Inc., ("C3 of Bulloch"), of which he is the sole owner, employee, and beneficiary, and which is operated out of his home. (Id. at pp. 6–7, 10.) Talarico likewise invested through his company, Defendant Pooler Property Holdings, LLC ("Pooler Property Holdings"), of which he is allegedly the sole owner and agent, and which is operated out of his medical office. (Id. at pp. 9–10.) Shin's investment was made through his family trust, the Stanley J. Shin Family Trust (the "Trust"). (Id. at p. 8.)

The Second Amended Complaint alleges that, following the creation of GVP, the Physician Investors would refer patients to GVP for "expensive and invasive vascular procedures" in exchange for profit distributions and "other payments" from GVP. (Id. at p. 31.) According to the Second Amended Complaint, the profit distributions for Physician Investors Lin, Talarico, and Shin were paid out not to the individuals but to C3 of Bulloch, Pooler Property Holdings, and the Trust, respectively. (Id. at pp. 7–10.) Following the referrals, GVP would then file claims with Medicare and Medicaid seeking reimbursements for services rendered to the referred patients. (Id.

3

at p. 39.) The Second Amended Complaint contends that this scheme violated the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320(a)-7b(b)(2)(A), and, in turn, the FCA. (Id. at pp. 31, 34–35.)

Relators additionally allege that this scheme violated the Stark Act, 42 U.S.C. § 1395nn, and, in turn, the FCA.[4] (Id. at pp. 47–50, 53.) They allege that Defendant Statesboro Cardiology and GVP engaged in a "billing scheme that disguised the location of certain billings that [GVP] could not make without violating the Stark [Act]'s prohibition against self-referral of designated services." (Id. at p. 48.) According to the Second Amended Complaint, Talarico referred patients to GVP for medical procedures that qualify as "designated health services" under the Stark Act, and Lin, as lead interventionist at GVP, then performed those procedures on the patients or, alternatively, referred those patients to Statesboro Cardiology (where Dr. Lin had an additional established practice and Drs. Shin and Nabert also had established practices) to undergo those procedures. (Id. at p. 49.) However, according to the Second Amended Complaint, regardless of whether Lin performed those procedures at GVP or referred the patients to Statesboro Cardiology, Statesboro Cardiology billed Medicare for those services. (See id. at p. 50.) As a result, according to the Second Amended Complaint, the associated claims either falsely stated the location of service, rendering the claims in violation of the FCA, or violated the Stark Act's prohibition against self-referrals because Lin would have referred patients to Statesboro Cardiology, where Defendant Lin holds his principal office. (Id. at pp. 7–8, 50.)

---

[4] Because compliance with the AKS and the Stark Act is a "condition of payment for Medicare and Medicaid, claims submitted for services rendered in violation of these statutes can form the basis of liability under the F[CA]." United States v. Marder, 208 F. Supp. 3d 1296, 1316 (S.D. Fla. 2016) (quotation omitted) (alteration in original).

4

## II.    Procedural Background

Relators initially filed this action on May 29, 2018. (Doc. 3.) After the United States and the State of Georgia declined to intervene, (docs. 24, 25), the Court unsealed the initial Complaint, (docs. 30, 31), and Relators filed an amended complaint, (doc. 32 (the "First Amended Complaint")). In the First Amended Complaint, Relators asserted eight separate claims: (1) an FCA presentment clause claim under 31 U.S.C. § 3729(a)(1)(A); (2) an FCA make-or-use clause claim under 31 U.S.C. § 3729(a)(1)(B); (3) an FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C); (4) an FCA claim concerning "reverse false claims" under 31 U.S.C. § 3729(a)(1)(G); (5) a GFMCA claim for presenting false or fraudulent claims under O.C.G.A. § 49-4-168.1(a)(1); (6) a GFMCA claim for making false material statements under O.C.G.A. § 49-4-168.1(a)(2); (7) a GFMCA conspiracy claim under O.C.G.A. § 49-4-168.1(a)(3); and (8) a GFMCA claim concerning "reverse false claims" under O.C.G.A. § 49-4-168.1(a)(7). (Doc. 32, pp. 60–64.)

Numerous Defendants (including the Moving Defendants and the O'Dare Defendants) then filed various motions to dismiss the First Amended Complaint. (Docs. 72, 73, 74, 75, 80, 81.) In ruling on the motions, the Court dispelled Defendants' substantive arguments that the claims could not prevail under the applicable statutes. (Doc. 130, pp. 27–46.) For example, the Court found that the First Amended Complaint adequately alleged the requisite scienter under the FCA, (id. at pp. 29–30), adequately alleged AKS violations with particularity, (id. at pp. 32), and sufficiently plead its FCA and GFMCA claims, (id. at pp. 35–46). Defendants also raised various arguments regarding general pleading deficiencies. In ruling on those points, the Court found that the First Amended Complaint amounted to an improper shotgun pleading. (Id. at pp. 11–15.) On the other hand, the Court found the First Amended Complaint's collective pleading style throughout the

complaint was adequate to put the Defendants on notice for their alleged participation in the fraudulent scheme, but found the collective pleading under each count was not sufficient to show which Defendants were charged under each count. (Id. at pp. 16–21.) Finally, it found that the First Amended Complaint had not adequately pled claims against C3 of Bulloch, Pooler Property Holdings, or the Trust. (Id. at pp. 21–27.) Accordingly, to cure these pleading deficiencies, the Court directed Relators to file a Second Amended Complaint addressing the problems highlighted by the Order. (Id. at p. 47.) Specifically, the Court held that,

> Relators shall: (1) identify and include within each separate count the specific factual allegations that Relators contend support each count; (2) allege with particularity Defendant C3 of Bulloch, Defendant Pooler Property Holdings, and Defendant SJS Family Trust's involvement in the purported fraud scheme; and (3) specifically identify which Defendants Relators contend are liable under each count."

(Id.) The Court additionally clarified that "Relators **SHALL NOT** make any additions, modifications, or other amendments to their Amended Complaint other than those explicitly ordered herein." (Id.) Relators then timely filed their Second Amended Complaint. (Doc. 131.) In attempt to comply with the Court's ruling, the Second Amended Complaint contains seventy-four additional paragraphs under the "Counts" sections, (id. at pp. 61–88), as well as updated information regarding C3 of Bulloch, Pooler Property Holdings, and the Trust, (id. at pp. 6–10). In compliance with the Order, Relators made no other changes from the First Amended Complaint. (See id. at p. 2, n.1.)

The Moving Defendants then filed a Motion to Dismiss the Second Amended Complaint, arguing, *inter alia*, that Relators failed to comply the three instructions listed in the Order. (Doc. 139.) The O'Dare Defendants also filed separate Motions to Dismiss arguing, generally, that Relators have not adequately pled how they are liable under each count. (Docs. 158, 159.)

Relators filed Responses to all the Motions. (Docs. 157, 160.) The O'Dare Defendants filed a Reply, (doc. 166), but the Moving Defendants did not.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993);

see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure imposes more stringent pleading requirements on claims alleging fraud.[5] Clausen, 290 F.3d at 1308. The complaint must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." Hopper v. Solvay Pharms., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009).

## DISCUSSION

I. **Relators Have Adequately Identified and Included Specific Factual Allegations to Support Each of their Counts Per the Order's Instruction**

   A. **Relators' Mistaken Reference to Statesboro Cardiology as an Investor is not Fatal to their Claims.**

The Moving Defendants first argue that the Second Amended Complaint fails to comply with the instruction in the Order to "identify and include within each separate count the specific factual allegations that Relators contend support each count." (Doc. 139, p. 7 (quoting doc. 130, p. 47).) Defendants are incorrect.

It is true that in the Order the Court found the First Amended Complaint to be an improper shotgun pleading. (Doc. 130, pp. 11–15.) The First Amended Complaint contained allegations that rolled into every successive count, which the Eleventh Circuit Court of Appeals has found to be a "quintessential shotgun pleading[]." Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Indeed, the Eleventh Circuit has held "the most common type" of shotgun pleading to be "a complaint containing multiple counts where each

---

[5] The Eleventh Circuit Court of Appeals has made clear that "Rule 9(b) does apply to actions under the False Claims Act." United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1308–09 (11th Cir. 2002).

8

count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321 (11th Cir. 2015). This is because when a complaint is pled in this manner, defendants are not put on notice as to what conduct the counts are referring to because "the answer is always 'everything that the plaintiff has previously mentioned anywhere in the complaint.'" Estate of Bass v. Regions Bank, Inc., 947 F.3d 1352, 1356, n.5 (11th Cir. 2020). This was precisely the problem with the First Amended Complaint, where Relators incorporated all of the previous paragraphs into each count without specifying which allegations applied. Accordingly, the Court found it to be an improper shotgun pleading. (Doc. 130, p. 14.) In line with Eleventh Circuit precedent, the Court allowed Relators one opportunity to cure these deficiencies by amending their complaint. (Doc. 130, p. 15 (citing Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018) (mandating that district courts allow a plaintiff "once chance to replead before dismissing [the] case with prejudice on non-merits shotgun pleading grounds")).) Relators then timely filed their Second Amended Complaint, which contained seventy-four additional paragraphs containing factual support for each of the eight counts. (See doc. 131, pp. 61–88.)

Despite these additions and the elimination of all "incorporated by reference" language, Defendants nevertheless argue that "Relators have failed to sufficiently plead specific factual allegations in support of each count." (Doc. 139, p. 7.) The Moving Defendants point, as a specific example, to Count One, where Relators note that "Physician Investor Defendants (including Statesboro Cardiology . . .) invested in [GVP]." (Doc. 139, p. 7 (quoting doc. 131, p. 62).) The Moving Defendants attack this allegation as "facially deficient" because there are no prior factual allegations in the Second Amended Complaint that support this assertion that Statesboro

9

Cardiology was an investor in GVP.  (Id.)  Relators, in their Response, candidly admit that "the reference to Statesboro Cardiology as an 'investor' . . . is just a mistake," (doc. 157, p. 3), but, as Relators point out, this minor pleading issue does nothing to undermine Relator's claims or to advance the Moving Defendants' defenses or their theory of the case, as the Court already found the First Amended Complaint alleged "Statesboro Cardiology [to be] a proper defendant . . . because of its 'direct involvement in the fraudulent scheme,'" (doc. 157, p. 3 (quoting doc. 130, p. 27)).  Indeed, within Count One, Relators specifically incorporate allegations implicating Statesboro Cardiology through false claims made under its fraudulent billing scheme.  (Doc. 131, p. 65 (detailing Statesboro Cardiology's billing scheme that worked together with GVP to violate the Stark Act by facilitating improper referral or by improperly disguising the location of services rendered).)  The Moving Defendants' attempt to transform one mistaken reference to Statesboro Cardiology as an "investor" into a ground for dismissal is unfounded.[6]  A simple misstatement of fact is not grounds for dismissing the entirety of a complaint.  See, e.g., United States ex rel. Silva v. VICI Mktg., LLC, 361 F. Supp. 3d 1245, 1252 (M.D. Fla. 2019) (refusing to dismiss a complaint because of an immaterial mistake incorporating unrelated paragraphs where defendants could not show prejudice from the pleading error, and the mistake was not confusing to the pleading overall).

Moreover, this mistake is wholly irrelevant to the Court's finding that the First Amended Complaint was an insufficient shotgun pleading.  Indeed, the problem identified by the Court in the Order was that "each of the eight counts raised in the Amended Complaint expressly

---

[6] After citing just one example, the Moving Defendants additionally contend in passing that "[t]he Second Amended Complaint is replete with similar examples of citations to paragraphs purported to support the allegations, but which are entirely lacking in said support." (Doc. 139, p. 7.)  The only examples provided, however, are citations to other paragraphs of the Second Amended Complaint concerning the "Physician Investor Defendants." (Id.)  Thus, as far as the Court can make out, the Moving Defendants' only tangible objection is to Statesboro Cardiology being referred to as an investor, which, as stated previously, is not material.

10

'incorporate[s] by reference' the allegations 'of all the preceding paragraphs' of the Amended Complaint . . . 'leaving the reader to wonder which prior paragraphs support the elements' of each count." (Id. at p. 13 (quoting Wagner, 464 F.3d at 1279).) Relators' Second Amended Complaint undoubtedly remedies this problem. The Second Amended Complaint's counts no longer incorporate "all the preceding paragraphs" by reference, and Relators added seventy-four additional paragraphs which detail the actions underlying each of the individual counts. (Compare doc. 32, pp. 60–64, with doc. 131, pp. 61–88.) In their briefing, Moving Defendants provide no supporting caselaw or logic to show how this simple misstatement that Statesboro Cardiology was an investor in GVP has failed to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Vibe Micro, Inc., 878 F.3d at 1295. It appears Moving Defendants' only issue with Relators' compliance with the Order's first instruction is simply an immaterial misstatement of fact, which does not defeat the fact that Relators have complied with the Court's instruction to cure the First Amended Complaint's shotgun pleading defects. Accordingly, the Court rejects the Moving Defendants' argument on this point as meritless and denies their Motion on this ground. (Doc. 139.)

**B.      The O'Dare Defendants' General Argument to Dismiss for Lack of Specific Factual Allegations Lacks Merit.**

The O'Dare Defendants likewise move to dismiss the Second Amended Complaint on this ground. Ironically, the O'Dare Defendants claim that Relators failed to identify and include factual allegations to support their claims, yet they themselves fail to provide any specific examples to support this alleged ground for dismissal. (See doc. 158, p. 4 (restating the Court's instruction in the Order to identify and include specific factual allegations to support each count and simply stating that "[t]he factual allegations cited by Relators . . . do not do so"); doc. 159, p. 4 (same).)

11

Beyond this general claim, the O'Dare Defendants' Motions do little more than reraise arguments that the Court previously rejected in the Order. For example, they argue that Relators failed to allege facts to show the O'Dare Defendants' fraudulent intentions for GVP. (Doc. 158, p. 4; doc. 159, p. 4.) However, the Court already addressed this argument and found that Relators' general pleading of scienter under the FCA satisfied Rule 9(b). (See doc. 130, pp. 29–30.) They additionally argue that Relators failed to satisfy the FCA's presentment requirement. (Doc. 158, p. 4; doc. 159, p. 4.) But this, too, was already addressed at length in the Order, and the Court found "that Relators sufficiently pled that Defendants presented or caused to be presented false claims to federal and state healthcare programs." (Doc. 130, pp. 38–39; see id. at pp. 35–39.) The Court declines to readdress these arguments which were already ruled on in the Order. Accordingly, as the O'Dare Defendants fail to provide the Court with any basis to dismiss the Second Amended Complaint for failure to identify specific supporting factual grounds in the counts, the Court denies the O'Dare Defendants' Motions regarding Relators' alleged non-compliance on this ground. (Docs. 158, 159.)

**II.     Relators Have Sufficiently Identified Which Defendants Are Liable Under Each Count**

    **A.     The Second Amended Complaint Makes Clear that Relators Allege that the Moving Defendants are Liable Under Each Count.**

The Moving Defendants also challenge Relators' compliance with the Order's instruction to "specifically identify which Defendants Relators contend are liable under each count." (Doc. 130, p. 47.) They claim Relators have failed to correctly remedy this pleading deficiency because the Second Amended Complaint "commingles claims against all . . . Defendants," and it only includes a parenthetical in the heading of Count One specifying that it was directed towards all Defendants, yet it "did not include any indication in the headings of the remaining seven counts."

(Doc. 139, p. 10.)  Importantly, the Moving Defendants do not challenge the sufficiency of the facts alleged against them to support each count.  (See generally id.)  They simply argue that because the heading of each count does not explicitly state that the count is being asserted against all Defendants and because the counts are pled against all Defendants collectively, Relators fail to "satisfy Rule 9(b) with respect to each defendant."  (Id.)  The Moving Defendants are incorrect.

In a case involving multiple defendants under Rule 9(b), "the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (1987).  As the Court noted in the Order, the First Amended Complaint failed under Rule 9(b) because it "lump[ed] all Defendants together under each count" and made generalized allegations such as "Defendants violated the [FCA]" without specifying which Defendants' conduct violated the statute or distinguishing their conduct.  (Doc. 130, p. 21.)  The Second Amended Complaint adds an allegation in each count clarifying that it is plead against "[e]ach and every one of the Defendants," "each of the Defendants," or "all of the Defendants." (Doc. 131, pp. 61, 70, 74, 76, 80, 82, 86.)  While the Moving Defendants are correct that only Count I's caption includes a parenthetical specifying that the count is plead against all Defendants, neither the Local Rules, the Federal Rules, nor the Court's Order require a heading precisely identifying the defendants against whom a claim is brought.  Nor have the Moving Defendants cited to any authority indicating that doing so is necessary to cure a shotgun pleading defect.  What is fundamental is to give a defendant "adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, 792 F.3d at 1323.

The Moving Defendants appear to understand that each count is pled against all Defendants, but they nevertheless contend that this amounts to inappropriate "commingl[ing]" of the claims. (Doc. 139, p. 10.)  This is incorrect.  It is permissible to plead against all defendants

13

collectively, so long as it is clearly alleged how each of them is liable under that count. See United States ex rel. Sedona Partners LLC v. Able Moving & Storage, Inc., No. 20-cv-23242, 2022 WL 178225, at *5 (S.D. Fla. Jan. 20, 2022) (finding it permissible to "allege claims against Defendants collectively without being considered a shotgun pleading" so long as there are allegations of specific conduct to establish liability). Again, the issue is notice, and while each count is pled against all Defendants, the Second Amended Complaint has, as discussed in Discussion Section I.A, supra, adequately alleged specific factual allegations concerning each Defendant's role in the alleged fraudulent scheme to support each count. It thus follows that because Relators have sufficiently put Defendants on notice of their alleged individual conduct in the fraudulent scheme, they are likewise on notice that each count has been asserted against them.

### B. The Second Amended Complaint Makes Clear that Relators Allege that the O'Dare Defendants are Liable Under Each Count.

The O'Dare Defendants likewise argue that the Second Amended Complaint "comingles the claims against all the defendants." (Doc. 158, p. 4; doc. 159, p. 4.) For the reasons stated in Section II.A, supra, this is incorrect. Furthermore, in their Reply, the O'Dare Defendants seem to fundamentally misunderstand the claims raised against them and the instructions given to Relators in drafting their Second Amended Complaint. They claim that the counts are not clearly pled against them because their names are only specifically mentioned once. (Doc. 166, p. 3.) The Court directs the O'Dare Defendants to the Order, which contains the very instructions their Motions are based on. In the Order, the Court discusses at length how Relators' collective pleading style against the "Genesis Individual Defendants"—which includes the O'Dare Defendants— provided adequate notice under Rule 9(b) to each Defendant within that group. (Doc. 130, pp. 16–21.) Accordingly, the Court denies the O'Dare Defendants' Motions on these grounds.

### III. Relators Have Sufficiently Pled Liability Against the Entities Identified in the Court's Order

Moving Defendants next argue that "Relators' new agency theory of liability is insufficiently pled and the claims against the Entities [(i.e., Defendants C3 of Bulloch, Pooler Property Holdings, and the Trust)] fail." (Doc. 139, p. 8.) They claim that Relators failed to comply with the Court's Order because they "failed to plead any additional factual allegations sufficiently particular under Rule 9(b) to substantiate the entities' involvement in the allegedly fraudulent scheme," and failed to add "any more factual underpinnings for this alleged agency relationship." (Id. at pp. 8–9.) The Court disagrees.

The Court's Order dictated that Relators "allege with particularity Defendant C3 of Bulloch, Defendant Pooler Property Holdings, and Defendant SJS Family Trust's involvement in the purported fraud scheme." (Doc. 130, p. 47.) The problems with the First Amended Complaint identified by the Order were that it contained neither substantive allegations targeted at these entities nor allegations that any of the entities' own conduct violated the FCA. (Id. at pp. 21–27; see generally doc. 32, pp. 6–8.) Indeed, the only allegations tying the entities to the allegedly fraudulent scheme were summarily stated as,

> For purposes of this lawsuit, Defendant Lin's knowledge, intent, and actions are imputable to Defendant C3 of Bulloch, through which Lin invested in [GVP] and received profit distributions from [GVP]. . . . For purposes of this lawsuit, Defendant Shin's knowledge, intent, and actions are imputable to [the Trust]. . . . For purposes of this lawsuit, Defendant Talarico's knowledge, intent, and actions are imputable to Defendant Pooler Property Holdings . . . through which Talarico invested in [GVP] and received profit distributions from [GVP].

(Doc. 23, pp. 6–8.) "A[n] [FCA] complaint satisfies Rule 9(b) if it sets forth facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." Hopper, 588 F.3d at 1324 (internal quotations omitted). Given the flimsy and unclear allegations concerning the entities in

15

the First Amended Complaint, the Court read Relators' position to be that the entities were liable under an alter-ego theory and held that the First Amended Complaint failed to include sufficient factual allegations to support such a theory. (See doc. 130, pp. 21–27.) Relators have now pled additional facts to clarify that they seek to hold each of these entities liable not under an alter ego theory, but on the grounds that the entities are liable for "[their] own actions, and those of [their] agent[s] . . . , in investing in and receiving profits from [GVP]." (Doc. 131, p. 7, n.2.) According to the Second Amended Complaint, the entities are "direct participant[s] involved in the scheme, armed with the knowledge" of Lin, Shin, and Talarico, their respective agents. (Id.)

### A. C3 of Bulloch and Pooler Property Holdings

In the Order, the Court found that Relators failed to plead facts sufficient to show that C3 of Bulloch and Pooler Property Holdings were the alter egos of Lin and Talarico, respectively, and instructed them to correct this pleading deficiency in the Second Amended Complaint. (See doc. 130, pp. 21–27.) Instead, in the Second Amended Complaint, Relators clarify that they contend that C3 of Bulloch and Pooler Property Holdings are liable not as alter egos, but as actors directly involved in the scheme and also involved through the actions of their *agents*, Lin and Talarico. (Doc. 157, p. 7, n.2.) In their Motion, Moving Defendants claim that the new pleading of agency does not adequately allege the existence of an agency relationship. (Doc. 139, pp. 8–10.) The Court disagrees.

"[I]n cases brought under the [FCA][,] . . . the knowledge of an employee is imputed to the corporation when the employee acts for the benefit of the corporation and within the scope of his employment." Grand Union Co. v. United States, 696 F.2d 888, 891 (11th Cir. 1983). The Second Amended Complaint alleges that Lin is the "CEO, CFO, and Secretary" for C3 of Bulloch and that C3 of Bulloch maintains its principal office at Lin's personal address. (Doc. 131, p. 7.) It further

16

alleges that "there are no other owners or shareholders of C3 of Bulloch . . . beyond . . . Lin and his immediate family members" and that he and his family "personally enjoyed the benefit of the [GVP] investment." (Id.) Additionally, it alleges that "Lin elected to invest in [GVP] through . . . C3 of Bulloch . . . rather than through himself individually," "C3 of Bulloch . . . made all of Lin's investment in [GVP] and received Lin's profit distributions from [GVP]," and that Lin "was acting as agent of . . . C3 of Bulloch . . . and within the scope of that agency with respect to its investment in [GVP]." (Id.) The Court finds that, because the Second Amended Complaint specifically alleges that C3 of Bulloch made the investment in GVP, and because actions Lin took regarding the investment were within his role as C3 of Bulloch's agent, Relators have alleged C3 of Bulloch's direct involvement in the scheme with sufficient particularity to withstand Moving Defendants' Motion to Dismiss. Cf. Silva, 361 F. Supp. 3d at 1255 (finding the complaint inadequate because it failed to allege "that [the individual] was acting on behalf of and within the scope of his employment with [the defendant] . . . when he entered into the kickback schemes").

The Second Amended Complaint contains similar allegations with respect to Talarico's self-controlled company Pooler Property Holdings. It alleges that Talarico is the organizer and registered agent for the LLC, as well as its sole owner, and that its principal office is located at the address housing only Talarico's medical practice (where he is the only doctor). (Doc. 131, p. 9.) It further alleges that Pooler Property Holdings, "as directed by its agent . . . Talarico, made all of Talarico's investment in [GVP] and received all of Talarico's profit distributions from [GVP]." (Id.) Furthermore, the Second Amended Complaint alleges that Talarico "personally enjoyed" the benefit of the GVP investment and profit distributions, and that Talarico was "acting as agent of . . . Pooler Property Holdings . . . and within the scope of that agency with respect to its investment in [GVP]." (Id.) These allegations likewise are enough to meet Rule 9(b)'s particularity

17

requirement and to find that Relators have adequately alleged Pooler Property Holdings' direct involvement in the scheme.

### B.     The Trust

In the prior Order, the Court found that "Relators' minimal allegations regarding the Trust and Alexis Shin are not 'enough to raise a right to relief above the speculative level.'" (Doc. 130, p. 27 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).) The Court reasoned that,

> "[t]he Amended Complaint lack[ed] any factual allegations regarding the type of trust, who is the settlor of the trust, who are the beneficiaries of the trust, Alexis Shin's relation to Stanley Shin, how any injustice would occur if the Trust were not considered an alter ego of Stanley Shin, or how the Trust benefitted from any GVP profit distributions."

(Id. at p. 26.) Accordingly, the Court instructed Relators to allege the Trust's "involvement in the purported fraud scheme" with particularity. (Id. at p. 47.) To cure these deficiencies, Relators alleged in the Second Amended Complaint that the Trust is a "family trust," and that Stanley Shin's wife, Alexis Shin, is one of the trustees. (Doc. 131, p. 8.) The Second Amended Complaint further alleges that Alexis and Stanley Shin, as well as their children, all have direct or indirect interests in the Trust, and are the only individuals with interests in the Trust. (Id.) While it never asserts that Stanley Shin (in addition to Alexis Shin) is a trustee of the trust or that he has some other role that gives him authority to direct actions taken by the Trust, the Second Amended Complaint states that the Trust, "as directed by its agents . . . Stanley Shin and his wife Alexis M. Shin, made all of Shin's investment in [GVP] and received Shin's profit distributions from [GVP]." (Id.) The Court cannot say that the facts as alleged, without more, could support a finding that Stanley Shin was in fact an agent for the Trust. However, the Second Amended Complaint alleges that it was the Trust, not Shin, that made the investments in GVP and received its profit distributions. While the

facts determined through discovery may require a different result, at this time the Court finds that this allegation of the Trust's direct involvement in the scheme is sufficient to withstand the Motion to Dismiss.

### C. Statesboro Cardiology

Additionally, in their Motion, the Moving Defendants seem to argue that Relators also failed to plead sufficient facts with respect to Statesboro Cardiology, stating that Relators "are simply lumping Statesboro Cardiology in with the Entities under an agency theory." (Doc. 131, pp. 9–10.) This is incorrect. The Court did not instruct Relators to make any corrections with respect to Statesboro Cardiology. (See doc. 130, p. 47 (instructing Relators to plead particular facts against C3 of Bulloch, Pooler Property Holdings, and the Trust only).) Indeed, the Order made clear that Relators were not to make any changes to the First Amended Complaint that were not specifically directed by the Court. (Id.) And, as the Court previously held in the Order, Relators do not need to prove Statesboro Cardiology is liable under an alter ego theory because the allegations in the First Amended Complaint (which have been repeated without alteration in the Second Amended Complaint) sufficed to show their "direct involvement in the fraudulent scheme." (Id. at p. 27.) The same logic necessarily applies to Defendants' attempt to say that Statesboro Cardiology cannot be found liable under an agency theory. Relators were not required to include any new allegations specifying Statesboro Cardiology's liability because the Court's Order already found that Relators' existing allegations pertaining to Statesboro Cardiology sufficed to implicate it in the scheme. Accordingly, Defendants' arguments as they relate to Statesboro Cardiology are also without merit.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Moving Defendants' Motion to Dismiss, (doc. 139), and the O'Dare Defendants' Motions to Dismiss, (docs. 158, 159). Accordingly, Relators' Second Amended Complaint, (doc 131), remains the operative pleading. Additionally, the Court's Amended Scheduling Order, (doc. 210), continues to control the parties' activities in the case.

**SO ORDERED**, this 25th day of May, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA